# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JOSEPH F. JILES,**

    **Plaintiff,**

    v.                                             Case No. 19-CV-1111

**DR. SARA HOERL,**
**THOMAS MORRIS,**
**EDDIE EDWARDS,**
**PAUL KEMPER,**
**ROBERT MILLER,**
**RICK FREEZE, and**
**MATTHEW DOLLAR,**

    **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Joseph F. Jiles, a former Wisconsin state prisoner, filed this *pro se* civil rights action alleging that the defendants violated his constitutional rights. Jiles is proceeding on claims that the defendants acted with deliberate indifference to his risk of suicide and that they failed to treat his arm after he cut it. (Docket # 13 at 4–5.) The defendants have filed a motion for summary judgment on exhaustion grounds, which is fully briefed. (Docket # 36.) In addition, Jiles filed a motion to appoint counsel after summary judgment was fully briefed. (Docket # 53.) For the reasons below, I will grant in part the defendants' motion for summary judgment and deny Jiles' motion to appoint counsel.

## FACTS[1]

Jiles was confined at Milwaukee Secure Detention Facility from November 2018 to January 2019. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 1; Declaration of Emily Davidson ("Davidson Decl.") ¶ 8.) The court allowed Jiles to proceed on several Eighth Amendment deliberate indifference claims against Milwaukee Secure Detention Facility staff related to a cutting incident that took place on December 26, 2018. (DPFOF ¶¶ 3–4; Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 3–4.) Specifically, the court allowed Jiles to proceed on the following claims: (1) Jiles showed Sergeant Eddie Edwards a piece of glass, and Sergeant Edwards responded "ok" and walked away; (2) Jiles cut himself with the glass and smeared blood on his window but Warden Paul Kemper, Security Director Robert Miller, Captain Rick Freeze, Lieutenant Matthew Dollar, Sergeant Edwards, Correctional Officer Thomas Morris, and Psychologist Dr. Sara Hoerl ignored the blood and the cut on Jiles' arm. (DPFOF ¶ 5.)

Jiles submitted one inmate complaint related to the December 26, 2018 incident, inmate complaint MSDF-2019-1355. (DPFOF ¶ 6; Davidson Decl. ¶ 11, Ex. 1000; Ex. 1001; PPFOF ¶ 5.) He submitted the inmate complaint on December 29, 2018. (PPFOF ¶ 2.) In that complaint, Jiles complained specifically about the December 26, 2018 incident. (DPFOF ¶ 7; Davidson Decl. ¶ 13, Ex. 1001 at 8.) He identified his one issue as, "1st shift staff, (officers), PSU knowingly disregarded my suicide attempt (I could have died). Therefore I cannot trust staff to keep me safe, so I would like to be moved out of this place as soon as possible."

---

[1] Facts are taken from the Defendants' Proposed Finding of Fact (Docket # 38), Jiles' Response to the Defendants' Proposed Findings of Fact (Docket # 44), Jiles' Proposed Findings of Fact (Docket # 45), and Defendants' Response to Jiles' Proposed Findings of Fact (Docket # 50).

(DPFOF ¶ 8; Davidson Decl., Ex. 1001 at 8.) In the details section of the complaint, Jiles elaborated as follows:

> On Dec. 26, 2018, On 5N, Cell #A17, I Joseph Jiles cut my arm open so that blood continue to run down my arm, then I put blood all over my window around 6:00AM that morning. When f[ir]st shift came on, all shift they just look in there and kept going. Staff did not feed me, because I would not respond to them all shift. When 2nd shift came on they pulled me out to see the nurse, she determined that the wound on my left arm was bad enough for me to have to go to the hospital to get stitches in my arm. I believe I could have died, Do to staff disregard for my well-being and my mental health issues and my past suicide attempts they will let me die next time it happen. I fear for my safe and I'm emotional and mental stress. (staff were aware of my mental health issue[)]

(DPFOF ¶ 9; Davidson Decl., Ex. 1001 at 8.) In the complaint Jiles also says that he tried to resolve the issue by speaking to the security director the next day and by speaking to the psychological services unit. (DPFOF ¶ 10; Davidson Decl., Ex. 1001 at 8.)

An institution complaint examiner investigated the complaint and on February 17, 2019, recommended dismissal based on Lieutenant Dollar's incident report and Division of Adult Institution policies governing self-harm. (DPFOF ¶ 11; Davidson Decl., Ex. 1001 at 2–3.) On March 4, 2019, the reviewing authority accepted the examiner's recommendation and dismissed the complaint. (DPFOF ¶ 12; Davidson Decl. ¶ 13, Ex. 1001 at 6–7.) Jiles did not appeal the dismissal of inmate complaint MSDF-2019-1355 to the corrections complaint examiner. (DPFOF ¶ 13; Davidson Decl. ¶ 14, Ex. 1000; Ex. 1001 at 7.)

On January 16, 2019, Jiles was transferred from the Milwaukee Secure Detention Facility to the Dodge Correctional Institution. (PPFOF ¶ 6.) According to Jiles, while at Dodge Correctional Institution, he never received the institution complaint examiner recommendation on the inmate complaint. (PPFOF ¶ 7.) On February 26, 2019, Jiles was transferred from Dodge Correctional Institution to Waupun Correctional Institution.

(PPFOF ¶ 8.) According to Jiles, while at Waupun, he never received the reviewing authority's decision to accept the complaint examiner's recommendation. (PPFOF ¶ 9.)[2]

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set

---

[2] The defendants dispute that Jiles did not receive the inmate complaint examiner's recommendation to dismiss his inmate complaint and the reviewing authority's decision to dismiss the complaint. (Defendants' Response to Jiles' Proposed Findings of Fact ¶¶ 7, 9.) According to the defendants, the evidence shows that the institution complaint examiner receipt was sent to Jiles at Dodge Correctional Institution, and the institution complaint examiner's recommendation and the reviewing authority's decision were sent to Jiles at Waupun Correctional Institution. (Docket # 49 at 2; Docket # 39-2 at 7.)

4

forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*1.  Administrative Exhaustion Requirement*

### 1.1  Prison Litigation Reform Act

Because Jiles was incarcerated when he filed his federal complaint, the Prison Litigation Reform Act ("PLRA") applies to this case. The PLRA provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to adhere to "the specific procedures and deadlines" established by the institution's

5

policy. *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). But "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Pyles*, 829 F.3d at 864. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Jiles failed to exhaust. *Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

    1.2  Inmate Complaint Review System

  The Wisconsin Department of Corrections requires an inmate with a complaint about prison conditions or the actions of prison officials to exhaust all administrative remedies using the Inmate Complaint Review System ("ICRS") before commencing a civil action. Wis. Admin. Code §§ DOC 310.01(2)(a), 310.05. The ICRS is available for inmates to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1).

  In order to use the ICRS, an inmate must file a complaint with the institution complaint examiner ("ICE") within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. *Id.* After reviewing each complaint and acknowledging it in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§ DOC 310.10(9), 310.10(12). An inmate may appeal a rejected complaint within ten days to the appropriate reviewing authority who shall only review the basis for the rejection of the complaint; the reviewing authority's decision is final. Wis. Admin. Code § DOC 310.10(10).

If the ICE accepts the complaint, an inmate may appeal the reviewing authority decision to the corrections complaint examiner ("CCE") within fourteen days after the date of the decision. Wis. Admin. Code § DOC 310.12(1). Upon good cause as determined by the CCE, an appeal filed later than fourteen days after the date of the reviewing authority decision may be accepted. Wis. Admin. Code § DOC 310.12(6). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.13(2).

2. *Application to this Case*

The defendants contend that Jiles failed to exhaust his administrative remedies because he did not appeal the dismissal of his inmate complaint, MSDF-2019-1355. (Docket # 37 at 10.) In response, Jiles contends that he attempted to properly exhaust his claims, but that remedies were unavailable because he was transferred to another prison and did not receive the ICE recommendation to dismiss his complaint or the reviewing authority decision dismissing the complaint. (Docket # 43 at 1, 2.)

The parties dispute whether Jiles received the ICE recommendation and reviewing authority decision. The defendants contend that the dispute is not material because, assuming he did not receive a decision on his complaint, under Wis. Admin. Code § DOC 310.11(3) Jiles could have filed an appeal to the CCE 45 days after he received the acknowledgement of his inmate complaint. (Docket # 49 at 3; Wis. Admin. Code § DOC 310.11(3) ("If the inmate does not receive a decision within 45 days after the date of acknowledgement under s. DOC 310.10(4), the inmate may appeal to the CCE."). However, it is not clear Jiles received an acknowledgment of his inmate complaint under § DOC 310.10(4). Jiles avers in his

7

declaration that he tried to exhaust his administrative remedies but that he "never received anything from the ICE department." (Docket # 46 at 2, ¶ 14.) Jiles also avers that after he transferred to Waupun Correctional Institution, he attempted to inquire about his inmate complaint through the grievance system, but he received no response. (Docket # 46 at 2, ¶ 10.) Thus, as it appears that Jiles did not receive acknowledgment of his inmate complaint because he never received anything from the ICE department *and* because he asked about the status of his grievance but received no response, it is not clear what more he could do under the circumstances. *Cf. Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019) (failure to receive a receipt for administrative appeal constitutes a "red flag," which requires an inmate to inquire why he had not received "such an important document").

More importantly, Jiles received the remedy he sought in his inmate complaint—transfer to another institution—and he therefore did not need to appeal even if he had received the decision dismissing his inmate complaint. In *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005), an inmate filed a grievance complaining about the dangerous conditions in his cell and requesting to be moved from the cell immediately. *Id.* Four days after he filed the grievance, he was moved from the cell. *Id.* The inmate filed a separate grievance about the poor condition of his mattress and requesting a clean one, and he subsequently received an adequate mattress. *Id.* The inmate did not file an appeal regarding either grievance, although he could have under the prison's administrative rules. *Id.* The Court of Appeals for the Seventh Circuit determined that the inmate did not need to appeal grievances that were resolved as requested and where money damages were not available. *Id.* at 695–97.

Similarly, in this case, the relief Jiles requested in his inmate complaint was "to be moved out of this place as soon as possible." Jiles dated his inmate complaint December 29,

8

2018. Eighteen days later (January 16, 2019), Jiles was transferred to Dodge Correctional Institution and about a month and ten days after that (February 26, 2019), he was transferred to Waupun Correctional Institution. Jiles received the remedy he requested from the prison before the time to file an appeal and he seeks only money damages in this case, which the prison cannot provide. Thus, under *Thornton*, there was no need for Jiles to appeal the dismissal of his inmate complaint. Jiles' inmate complaint MSDF-2019-1355 is therefore fully exhausted.

The defendants also contend that MSDF-2019-1355 does not exhaust administrative remedies for Jiles' claim that he showed Edwards a piece of glass and Edwards walked away, or for his claims against Warden Kemper and Security Director Miller. (Docket # 37 at 10.) Jiles does not address this argument in his response to the defendants' motion and I find that he did not exhaust these claims. The inmate complaint does not allege that Jiles showed Edwards (or any staff member) an object he planned to use to cut himself. In addition, while the inmate complaint states that "first shift staff, (officers), and PSU" disregarded his suicide attempt, Jiles does not complain that Warden Kemper or Security Director Miller did so. To properly exhaust these claims, Jiles needed to "clearly identify" these issues in his inmate complaints. *See Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020); Wis. Admin. Code § DOC 310.07(5), (6). He did not clearly identify the issues and, therefore, he did not exhaust administrative remedies as to these claims.

In sum, I will grant the defendants' motion for summary judgment as to Jiles' glass claim against Edwards and as to his claims against Kemper and Miller and I will dismiss Kemper and Miller. I will deny defendants' motion for summary judgment as to his remaining claims against Edwards, Dr. Sara Hoerl, Thomas Morris, Rick Freeze, and Matthew Dollar

and set deadlines for the completion for discovery and for filing dispositive motions on the merits.

## MOTION TO APPOINT COUNSEL

Jiles filed a motion to appoint counsel after the defendants' summary judgment motion was fully briefed. (Docket # 53.) In support of his motion, he states that he has presented colorable claims, he has made a reasonable attempt to find a lawyer on his own, and he lacks the competency to litigate this case himself due to his history of mental health problems.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority*, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490–491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

On June 18, 2020, I denied without prejudice Jiles' prior motion to appoint counsel and determined that he had made a reasonable attempt to find a lawyer on his own. (Docket # 28 at 3.) I also determined that Jiles' case filings demonstrated that he had a good understanding of his claims, that he had a good ability to clearly and persuasively advocate for himself, and that, while cognizant of Jiles' mental health issues, they did not appear to have hindered his ability to effectively represent himself. (*Id.*) This assessment has not changed. If anything, Jiles' summary judgment filings show that he can still represent himself. Moreover, Jiles has been released from prison and, therefore, does not face the challenges that he did when he was confined. The court will therefore deny Jiles' motion to appoint counsel.

**ORDER**

**THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 36) is **GRANTED IN PART AND DENIED IN PART** as described herein. The

11

motion is granted as to Jiles' glass claim against Eddie Edwards and as to his claims against Paul Kemper and Robert Miller.

**IT IS FURTHER ORDERED** that defendants Kemper and Miller are **DISMISSED**.

**IT IS FURTHER ORDERED** that Jiles' motion to appoint counsel (Docket # 53) is **DENIED**.

**IT IS FURTHER ORDERED** that the deadline for the completion of discovery is **April 12, 2021**, and the deadline for filing dispositive motions is **May 14, 2021**.

Dated at Milwaukee, Wisconsin, this 21st day of December, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge